**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**In the Matter of**

    **THE BIG WHALE, LLC,**            Case No. 11-23756-jes

    **Debtor.**

---

**DEBTOR'S DISCLOSURE STATEMENT**

---

The Big Whale, LLC, as a debtor in possession, submits this Disclosure Statement pursuant to 11 U.S.C. § 1125.

## INTRODUCTION

On March 21, 2011, The Big Whale, LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the United States Code (the "Code"). The Debtor has, pursuant to 11 U.S.C. § 1125(b), obtained approval of this Disclosure Statement. The Bankruptcy Court for the Eastern District of Wisconsin ("Court") has set a hearing on the confirmation of the Debtor's Plan of Reorganization (the "Plan") for _____. You are being served with a copy of (i) the Plan, (ii) the Order Approving Disclosure Statement and Setting Dates and Deadlines for Confirmation of the Plan, (iii) this Disclosure Statement, and (iv) a Ballot for voting on the Plan, if you are entitled to receive one.

At the hearing on this Disclosure Statement, the Court determined that, pursuant to 11 U.S.C. § 1125(a), this Disclosure Statement contains adequate information to enable hypothetical, reasonable investors typical of the holders of claims in these cases to make informed judgments whether to accept or reject the Plan.

Jerome R. Kerkman
Justin M. Mertz
Kerkman & Dunn
757 N. Broadway, Suite 300
Milwaukee, WI 53202-3612
Phone: 414.277.8200
Fax: 414.277.0100
Email: jkerkman@kerkmandunn.com

**THIS DISCLOSURE STATEMENT HAS BEEN DETERMINED BY THE COURT TO CONTAIN ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE CODE. THIS DETERMINATION DOES NOT CONSTITUTE A RECOMMENDATION OR APPROVAL OF THE PLAN BY THE COURT.**

FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ALL SUMMARIES, AND IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, **THE TERMS OF THE PLAN CONTROL.** THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING CONTAINED IN IT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION ON THE DEBTOR.

**CERTAIN STATEMENTS, BY THEIR NATURE, ARE FORWARD LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.**

Defined terms used which are not defined in this Disclosure Statement have the meaning given them in the Plan.

Accompanying this Disclosure Statement are copies of the following, notice and service of which is hereby provided:

1. The Plan;

2. Order of the Court approving this Disclosure Statement and setting Dates and Deadlines for Confirmation of the Plan; and

3. The Ballot for Accepting or Rejecting the Plan (the "Ballot") if you are entitled to vote on the Plan.

## CONFIRMATION HEARING

The Court has scheduled a hearing to consider the confirmation of the Plan for _____ (the "Hearing Date"). The Court has directed that (i) Ballots be returned to Counsel for the Debtor on or before _____ and (ii) objections, if any, to confirmation of the Plan be served and filed with the Court on or before _____. The hearing set to occur on the Hearing Date may be adjourned from time to time by the Court without further notice except for the announcement of the adjournment made at the hearing or any subsequent adjourned hearing.

## HISTORY OF THE DEBTOR AND EVENTS LEADING TO FILING

The Debtor is a Wisconsin limited liability company, jointly owned by Steve Lindner and his sister, Deb Lindner (together, the "Lindners"). The Debtor was organized in June of 2001 to function as a real estate holding company. Around the same time, the Lindners also incorporated seven other limited liability companies for the purchase of real estate properties (together with The Big Whale, LLC, "Lindner LLCs").[1] Over the past ten years, the Lindner LLCs have built, purchased, sold, and leased well over 50 rental properties in Milwaukee County, Wisconsin as part of their normal business operations. The last time the Linder LLCs sold a property was on June 18, 2010.

As of March 18, 2011, the Lindner LLCs owned 49 parcels of real property in Milwaukee County ("Properties"). The Lindners determined that the Properties should be transferred to The

---

[1] Those LLCs include: Carley, LLC; Dexter, LLC; Maddie, LLC; Shiloh, LLC a/k/a Shiloh Holdings, LLC; Westfield Holdings, LLC; Wilson Holdings, LLC; and Barkow Industries, LLC (which was purchased by the Lindners in 2008 as part of the purchase of real estate located at 2151 S. Robinson Ave., Milwaukee, WI). The Lindners own other companies that are not related to the Debtor's chapter 11 case.

3

Big Whale, LLC to reduce costs and simplify an anticipated filing under chapter 11 of the Code. The Properties were transferred by the Lindner LLCs to the Debtor on March 18 and 19, 2011, as evidenced by quitclaim deeds recorded in the Milwaukee County Register of Deeds. As part of the transfers of the Properties, the Debtor assumed the outstanding mortgage and other debts related to the Properties.[2]

The Properties contain approximately 138 rentable residential and commercial units, including one 16-family complex, five 4-family buildings, two 5-family buildings, one industrial warehouse, and a number of duplexes and single-family buildings. The units are leased to third party tenants to produce rental income for the Debtor.

The Debtor has no direct employees. The Lindners (and other family members and related companies described below) manage the Debtor's books, renovate and maintain the Properties, negotiate with and place tenants into the Properties, contract with third parties, and pay the Debtor's bills as follows:

- *Property Management.* The Debtor's bookkeeping, property management, lease negotiation, apartment showings, and collections are serviced out to Milwaukee Rents, LLC ("Milwaukee Rents"). Milwaukee Rents is solely owned by Tosha Lindner, Steve Lindner's spouse. At one point in time, Milwaukee Rents was paid a fee for its services; however the Debtor has been unable to pay Milwaukee Rents for approximately two years prior to the Debtor's bankruptcy filing. Milwaukee Rents may have claims against the Debtor, but has waived those claims in consideration of (a) continued payment of fees during the Debtor's case, (b) the anticipation of working as the management company for the Debtor in any successful plan of reorganization, and (c) Milwaukee Rents' status as an Insider of the Debtor. Prior to the Debtor's

---

[2] To the best of the Debtor's knowledge, any and all creditors of the Lindner LLCs have been notified of this chapter 11 case for notice and claim purposes. The Lindners, as joint owners of all the Lindner LLCs, may also be guarantors or co-borrowers of the debts and liabilities associated with the Lindner LLCs.

4

chapter 11 filing, the Debtor's operating income was held in a bank account owned by Milwaukee Rents at M&I Marshall & Ilsley Bank, which was then transferred to U.S. Bank in early 2011. All of the Debtor's rental income was deposited into the bank account held by Milwaukee Rents and used by Milwaukee Rents to pay the Debtor's lenders, vendors, and normal business expenses. The Debtor has agreed to pay Milwaukee Rents during the Debtor's chapter 11 case; this payment compensates Milwaukee Rents a reoccurring amount equal to 6% of the Debtor's gross monthly rental receipts. In consideration of the 6% fee, Milwaukee Rents continues to manage the Debtor's funds, Properties, and tenants.

- *Property Maintenance.* Physical maintenance of the Debtor's Properties (including general building repairs, construction, plumbing, electrical repairs, appliance repairs, and cleaning) is performed by Centro Construction and Development, LLC ("Centro"), which is solely owned and operated by Steve Lindner. Steve Lindner, the sole employee of Centro, personally maintains the Properties and occasionally hires sub-contractors for special jobs like painting and larger renovations. The Debtor has agreed to pay Centro for physical maintenance services during the chapter 11 case; this payment compensates Centro for labor only in an amount equal to 3% of the Debtor's gross monthly rental receipts. Centro may have claims against the Debtor, but has waived those claims in consideration of (a) continued payment of fees during the Debtor's case, (b) the anticipation of working as the physical maintenance company for the Debtor pursuant to any successful plan of reorganization, and (c) Centro's status as an Insider of the Debtor. In consideration for the 3% fee, Centro continues to maintain the Debtor's Properties during the chapter 11 case.

- *Other Professionals.* Prior to filing its petition, the Debtor's year-end tax returns were completed by J. R. Lindner Income Tax Service, Inc., solely owned by James Lindner, the Lindners' father. James Lindner is not a creditor of the Debtor and has not performed any work

for the Debtor during its chapter 11 case. In the event the Debtor requires professional services from James Lindner or any another accounting firm during the pendency of this case, the Debtor will file an application to employ such professional. The Debtor retained Kerkman & Dunn prior to filing its chapter 11 petition. Kerkman & Dunn is authorized by the Court's April 1, 2011 Order to act as the Debtor's counsel during this case.

* * *

The Debtor was forced to file its petition for relief for a few reasons, including the country's financial and real estate crises. The Debtor purchased its warehouse property in 2008, which was re-assessed for tax purposes in 2009, resulting in an additional $50,000 for real estate taxes, which was an unforeseen annual expense of the of the Debtor when the warehouse property was purchased. The Debtor pays water bills on all of its Properties, most of which are billed back to tenants on a quarterly basis. With the downturn in the economy, tenants became increasingly delinquent in paying their water bills and rents on a timely basis, causing the Debtor's cash receipts to decline. With a shortage of cash, the Debtor was unable to pay property taxes as they became due, causing the Debtor to be in default under its loan agreements with various lenders. The Debtor was faced with foreclosure proceedings on its Properties, forcing it to file for protection under chapter 11 of the Code to protect its tenants and rental income streams derived from the Properties.

With the assistance of Milwaukee Rents and Centro, the Debtor continues to operate and manage its Properties and tenants during its chapter 11 filing.

# OVERVIEW OF PAYMENT PORTION OF PLAN

The material highlights of the payment portions of the Plan are set forth in Exhibit 1. A summary of Claims and their classification is set forth in Exhibit 2. This outline below is intended solely as an overview of some of the material portions of the Plan. The Plan should be read in its entirety. **Any conflict between this Disclosure Statement and the Plan will be resolved in favor of the Plan**. Any capitalized terms used in this Disclosure Statement shall have the meaning as defined in the Plan.

| Class | Description | Estimated Total | Treatment |
|---|---|---|---|
| 1 | Administrative Expenses | $38,360 | A portion ($35,548) of Administrative Expenses incurred during the case will be paid from a retainer held by the Debtor's counsel in trust. The estimated remainder of $2,487 (estimated as of the filing of this Disclosure Statement) shall be paid on or before the Effective Date out of the Debtor's operating account. |
| 2 | Unsecured Priority/Secured Tax | $210,349 | Amounts owed to Milwaukee County for unpaid real property taxes attributed to the Debtor's Properties will be paid upon any sale of each such Property. All remaining priority tax claims that are not otherwise satisfied by the sale of property of the estate or the Reorganized Debtor will be paid over 60 months from Petition Date with interest pursuant to 11 U.S.C. §§ 511 and 1129. |
| 3A | Wells Fargo, N.A. | $178,293 | The Allowed Secured Claim of Class 3A shall be paid in equal monthly installments of principal with interest at the rate of 4% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 3A will be treated as a Class 5 Unsecured Claim. |
| 3B | M&I Marshall & Ilsley Bank | $4,113,949 | The Allowed Secured Claim of Class 3B shall be paid in equal monthly installments of principal with interest at the rate of 4% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 3B will be treated as a Class 5 Unsecured Claim. |
| 3C | North Shore Bank | $231,309 | The Allowed Secured Claim of Class 3C shall be paid in equal monthly installments of principal with interest at the rate of 4% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 3C will be treated as a Class 5 Unsecured Claim. |

| | | | |
|---|---|---|---|
| 3D | Securant Bank & Trust | $1,719,002 | The Allowed Secured Claim of Class 3D shall be paid in equal monthly installments of principal with interest at the rate of 4% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 3D will be treated as a Class 5 Unsecured Claim. |
| 3E | WaterStone Bank | $5,146,230 | The Allowed Secured Claim of Class 3E shall be paid in equal monthly installments of principal with interest at the rate of 4% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 3E will be treated as a Class 5 Unsecured Claim. |
| 4A | The $437.97 Family Limited Partnership | $36,281 | The Allowed Secured Claim of Class 4A shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4A will be treated as a Class 5 Unsecured Claim. |
| 4B | 81302 Family Limited Partnership | $59,098 | The Allowed Secured Claim of Class 4B shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4B will be treated as a Class 5 Unsecured Claim. |
| 4C | Jerome Porubcan's IRA | $55,100 | The Allowed Secured Claim of Class 4C shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4C will be treated as a Class 5 Unsecured Claim. |
| 4D | Account #33884 IRA | $262,986 | The Allowed Secured Claim of Class 4D shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4D will be treated as a Class 5 Unsecured Claim. |
| 4E | Richard C. Barkow | $315,528 | The Allowed Secured Claim of Class 4E shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4E will be treated as a Class 5 Unsecured Claim. |
| 4F | RMOR, LLC | $214,709 | The Allowed Secured Claim of Class 4F shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4F will be treated as a Class 5 Unsecured Claim. |

| | | | |
|---|---|---|---|
| 4G | Joyful Homes, LLC | $408,413 | The Allowed Secured Claim of Class 4G shall be paid in equal monthly installments of principal with interest at the rate of 2% per annum, amortized over 30 years with no prepayment penalty. Any remaining Allowed Unsecured Claim of Class 4G will be treated as a Class 5 Unsecured Claim. |
| 5 | Unsecured Creditors | $982,070 | The holders of Allowed Unsecured Claims in Class 5 shall be paid 20% of their Allowed Unsecured Claim over 60 months beginning on the fifteenth day of the first month after the Effective Date with no interest. |
| 6 | Debtor's Equity Interests | $N/A | Equity interests in the Debtor shall remain unaffected by the Plan. |

The Debtor anticipates that the cash necessary to make the payments required to be made on or before the Effective Date will be on deposit in the Debtor's operating account. As of the filing of this Disclosure Statement the Debtor held approximately $105,000 in its operating account. The Debtor projects that it will have enough cash in its operating accounts to make the proposed payments as outlined in Exhibit 1.

## VOTING AND CONFIRMATION

**Voting.** After carefully reviewing this Disclosure Statement and the Plan, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan. Your Claims may be classified in more than one Class and, in such case, you should vote accordingly. Please return the ballot so that it is *received* no later than the date stated on the ballot, _____, **2011.** In order for the Plan to be accepted, two thirds of the dollar amount of the vote in each Class and a majority of Creditors casting ballots in each class must vote to approve the Plan.

If you do not vote to accept the Plan, or if you are the holder of an impaired Claim, you may be bound by the Plan if it is accepted by the requisite holders of the Claims.

If you have any questions about the procedure for voting, or if you did not receive a ballot, received a damaged ballot or lost your ballot, please contact Justin M. Mertz, attorney for the Debtor, at (414) 277-8200, or email him at jmertz@kerkmandunn.com.

9

**Hearing on Confirmation.** At the hearing on the confirmation of the Plan, the Court will determine, among other things, whether the Plan has been accepted by each impaired Class of Creditors.

An impaired Class is deemed to have accepted the Plan if at least two-thirds in amount and more than one-half in number of the Allowed Claims or interests of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Unless there is unanimous acceptance of the Plan by the members of an impaired Class of Claims, the Court must also determine that under the Plan the members of such Class will receive property of a value as of the Effective Date which is not less than the amount that the members of such Class would receive or retain if the Debtor was liquidated under Chapter 7 of the Code.

**Confirmation of Plan Without Necessary Acceptances.** The Plan may be confirmed even if it is not accepted by one or more classes if (a) the Plan is accepted by at least one impaired Class of Claims, and (b) the Court finds that the Plan does not discriminate unfairly against, and is fair and equitable as to each impaired Class which has not accepted the Plan. With respect to Secured Claims, "fair and equitable" means the Secured Creditors must (a) receive deferred cash with payments equal in value to the value of their Claims and retain the lien securing their Claims, (b) receive a lien on the proceeds of the sale of the property securing their liens, or (c) receive the indubitable equivalent of their Claims.

**THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN IF LESS THAN THE REQUISITE CLASSES DO NOT VOTE TO ACCEPT THE PLAN.**

**TREATMENT OF EXECUTORY CONTRACTS**

All executory contracts not specifically assumed by the Debtor shall be deemed rejected. However, unless otherwise specifically rejected in the Plan or prior to confirmation of the Plan by an appropriate motion filed with the Court, the executory contracts and/or leases that the Debtor

has with its various tenants on its Properties shall be assumed by the Debtor. The Debtor is not in default of the executory contracts and/or leases with its tenants and therefore there are no amounts necessary to cure any defaults.

## FUNDING OF THE PLAN AND FEASIBILITY

Funding of the cash payments due on the Effective Date will be from the Debtor's operations during the chapter 11 case. The Debtor has sufficient cash on deposit to make all of the estimated payments due on or before the Effective Date. Funding of the Plan's future installments to creditors will come from the normal operations of the Debtor's business after confirmation of the Plan.

## FUTURE PAYMENTS AND OPERATIONS

Monthly payments will be made from the Debtor's continued operation. A spreadsheet showing projected monthly payments and monthly cash flows through the year ended 2013 can be found on the attached Exhibit 3. This cash flow statement was prepared internally by the Debtor. Future projections of revenues and expenses were determined by reviewing (i) historical revenues and expenses of the Debtor, (ii) the Debtor's current operations, and (iii) anticipated future events that the Debtor believes will impact its ability to operate positively and negatively. The Debtor's historical gross rental income is as follows:

| 2007 | 2008 | 2009 | 2010 |
|---|---|---|---|
| $914,435 | $994,051 | $1,256,652 | $1,410,345 |

Although the Debtor's gross rental income has increased since 2007, such increases are in line with the Debtor's acquisition of additional properties, and therefore, additional rental income streams. However, the Debtor's expenses have also increased. The last time the Debtor sold one of its properties was a year prior to filing its bankruptcy petition; thus, the Debtor anticipates that its rental receipts will be consistent with historical amounts in 2010.

The Debtor's cash flow projections anticipate a 96% occupancy rate for its Properties. The Debtor experiences a regular amount of tenant turnover on an annual basis. Most of this turnover is consistent with the school calendars for Marquette University and the University of Wisconsin-Milwaukee and other normal seasonal renting patterns. Despite regular turnover, the occupancy rates remain relatively unaffected; the Debtor has historically been able to place new tenants into its owned Properties immediately after an existing tenant vacates a property and anticipates being able to do so in the future.

The Plan provides that the Debtor will pay Class 5 Unsecured Creditors 20% of their Claims over the course of 60 months after the Effective Date.

## LIQUIDATION ANALYSIS

Under a chapter 7 liquidation, the Debtor estimates that unsecured creditors would be paid 0% of their Claims. The liquidation analysis is on the attached <u>Exhibit 4</u>.

## TAX CONSEQUENCES OF PLAN

The Debtor does not believe there will be any material tax consequences to it as a result of the Plan. Section 108(a)(1)(A) of the Internal Revenue Code excludes discharged indebtedness from gross income if the discharge occurs in a title 11 case. Creditors are urged to consult with a tax expert to analyze the potential tax effects on them as a result of the Plan.

## REORGANIZED DEBTOR'S OFFICERS AND DIRECTORS

The Reorganized Debtor's members are:

    Steven Lindner, 50% member; and

    Debra Lindner, 50% member.

The Lindners do not draw a salary from the Debtor and will not draw a salary from the Reorganized Debtor. However, Insiders of the Debtor (Milwaukee Rents and Centro) do receive compensation from the Debtor for managing the Debtor's tenants and Properties.

## DISPUTED CLAIMS

If any objection or opposition is made to the allowance of the Claim or interest of any Creditor hereunder and such objection or opposition is pending on the date that payments or distributions are to be made under the Plan, then no payment or distribution shall be made to such Creditor until an order of the Court determining the validity and amount of such Claim or interest is entered and no longer subject to further review or appeal, at which time such payment and distribution of the amount awarded such Creditor shall be made. Unless the Court orders otherwise, objections to claims are due 30 days after the Effective Date.

## EFFECT OF CONFIRMATION

Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order vests all of the property of the estate in the Debtor free and clear of all claims and interests of creditors. Upon completion of the Plan or as otherwise provided in Section 1141 of the Code, the Debtor will receive a discharge. Until a discharge is granted, the automatic stay provisions of Section 362 of the Code still apply unless otherwise provided for in the Plan.

The provisions of the Plan shall be binding upon the Debtor and any creditor, whether or not such creditor has accepted the Plan and regardless of whether the claims of such creditor are impaired under the Plan.

## CONCLUSION

The Debtor proposes its Plan because it is in the best interests of all parties. The Plan maximizes the value of the Debtor as a going concern. For these reasons, the Debtor requests that creditors vote in favor of the Plan.

Dated: May 20, 2011.

                                               */s/ Justin M. Mertz*
                                               Jerome R. Kerkman
                                               Justin M. Mertz
                                               Kerkman & Dunn

                                               Attorneys for the Debtor

<u>P.O. Address</u>:

757 North Broadway, Suite 300
Milwaukee, WI 53202-3612
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jmertz@kerkmandunn.com

*Exhibit 1*

**Debtor's Plan Payment Summary**

| Class | Description | Total Claim Amount | Payments made Post-petition | Payments on Effective Date | Remaining Payable | Monthly Payment | Description |
|---|---|---|---|---|---|---|---|
| 1 | *Administrative Expenses* | $ 36,242.19 | $ (35,548.10) | $ (694.09) | $ - | $ - | |
| 2 | *Priority/Secured Tax Claims* | $ 210,348.95 | $ | - | $ 210,348.95 | ($4,315.93) | Paid over 56 months with interest at Federal Judgment Rate (assumed 6%) (Confirmation by July, 2011) |
| | *Secured Creditors* | | | | | | |
| 3A | American Home Mortgage | $ 178,293.10 | $ | $ | $ 178,293.10 | ($851.20) | AHM Note (30 yr. fixed, 4%) |
| 3B | M&I Bank | $ 4,113,948.74 | $ | $ | $ 4,113,948.74 | ($19,640.62) | M&I Note (30 yr. fixed, 4%) |
| 3C | Maritime Savings Bank | $ 231,308.83 | $ | $ | $ 231,308.83 | ($1,104.30) | MSB Note (30 yr. fixed, 4%) |
| 3D | Securant Bank | $ 1,719,002.00 | $ | $ | $ 1,719,002.00 | ($8,206.78) | SB Note (30 yr. fixed, 4%) |
| 3E | Waterstone Bank | $ 5,146,230.19 | $ | $ | $ 5,146,230.19 | ($24,568.89) | WB Note (30 yr. fixed, 4%) |
| | | | | | $11,388,782.86 | ($54,371.79) | Class 3A-3E Totals |
| | *Partially Secured Creditors* | | | | | | |
| 4A | 43797 LP | $ 9,845.99 | $ | $ | $ 9,845.99 | ($47.01) | |
| 4B | 81302 LP | $ 17,564.12 | $ | $ | $ 17,564.12 | ($83.85) | Pay secured 2nd mortgagees total value of secured claim over 30 years at 2%; or paid in full or otherwise agreed upon from the proceeds of any sale of collateral. |
| 4C | Porubcan IRA | $ 55,100.00 | $ | $ | $ 55,100.00 | ($263.06) | |
| 4D | 33884 IRA | $ 178,112.82 | $ | $ | $ 178,112.82 | ($850.34) | |
| 4E | Barkow | $ 120,349.00 | $ | $ | $ 120,349.00 | ($574.56) | |
| 4F | RMOR, LLC | $ 87,535.51 | $ | $ | $ 87,535.51 | ($417.91) | |
| 4G | Joyful | $ 142,580.30 | $ | $ | $ 142,580.30 | ($680.70) | |
| | | $ 611,087.74 | | | $ 611,087.74 | ($2,917.43) | Class 4A-4G Totals |
| 5 | *Unsecured Creditors* | | | | | | |
| | 43797 LP | $ 26,434.65 | $ | $ | $ 26,434.65 | ($88.12) | |
| | 81302 LP | $ 41,534.28 | $ | $ | $ 41,534.28 | ($138.45) | |
| | Porubcan IRA | $ - | $ | $ | $ - | $0.00 | Pay 20% of claim out over 5 years, no interest to all Class 5 Unsecured Creditors |
| | 33884 IRA | $ 15,390.24 | $ | $ | $ 15,390.24 | ($51.30) | |
| | Barkow | $ 186,411.34 | $ | $ | $ 186,411.34 | ($621.37) | |
| | RMOR, LLC | $ 127,173.32 | $ | $ | $ 127,173.32 | ($423.91) | |
| | Joyful | $ 266,017.66 | $ | $ | $ 266,017.66 | ($886.73) | |
| | | | | | | ($2,209.87) | Total Partially Unsecured Creditors |
| | Remaining Unsecured Creditor | $ 165,154.45 | $ | $ | $ 165,154.45 | ($550.51) | Total Remaining General Unsecured |
| | **Totals** | **$12,857,549.48** | **$ (35,548.10)** | **$ (694.09)** | | **($64,365.54)** | |

*Exhibit 2*
*Claim Summary*

| Class | Description | Amount Scheduled | Filed Claim | Estimated Allowed | Monthly Plan |
|---|---|---|---|---|---|
| 1 | **Administrative Expenses - Professionals** | | | | |
| | Kerkman & Dunn (3/21/11 - present) | | | $11,242.19 | |
| | K&D (estimated remaining) | | | $20,000.00 | |
| | U. S. Trustee (estimated remaining) | | | $5,000.00 | |
| | Total | | | $36,242.19 | |
| | Less K&D remaining retainer | | | $ (35,548.10) | |
| | Less K&D amts. Paid from operations | | | $ - | |
| | Less U.S. Trustee amts. paid | | | $ - | |
| | **Administrative Exp. paid on Confirmation** | | | **$694.09** | |
| 2 | **Priority Tax Claims** | | | | |
| | Internal Revenue Service | $0.00 | $ - | $0.00 | |
| | Milwaukee County (Property Taxes) | $231,266.91 | $ 210,348.95 | $210,348.95 | |
| | Wisconsin Dep't of Revenue | $0.00 | | $0.00 | |
| | Total | | | $210,348.95 | -$4,315.93 |
| 3A | **American Home Mortgage** | | | | |
| | 2335-37 N. 65th Street | $175,603.07 | $178,293.10 | $178,293.10 | -$851.20 |
| | Total | $175,603.07 | $178,293.10 | **$178,293.10** | **-$851.20** |
| 3B | **M&I Marshall and Ilsley Bank** | | | | |
| | 2586-88 S. Austin Street | $ 277,538.00 | $276,231.86 | $276,231.86 | -$1,318.77 |
| | 2582-84 S. Austin Street | $ 117,252.00 | $117,049.46 | $117,049.46 | -$558.81 |
| | 2752 S. Austin Street | $ 157,742.00 | $158,031.48 | $158,031.48 | -$754.47 |
| | 2608 N. Bartlett, 1700 E. Belleview | $ 243,979.00 | $244,369.06 | $244,369.06 | -$1,166.66 |
| | 2627-29 N. Bartlett Ave. | $ 219,924.00 | $220,327.37 | $220,327.37 | -$1,051.88 |
| | 2752-54 N. Bremen Street | $ 155,465.00 | $155,829.49 | $155,829.49 | -$743.95 |
| | 3023 N. Bremen Street | $ 109,531.00 | $109,788.48 | $109,788.48 | -$524.15 |
| | 2432-34 S. Burrell Street | $ 153,289.00 | $153,461.51 | $153,461.51 | -$732.65 |
| | 1010 E. Clarke Street | $ 185,401.00 | $185,401.39 | $185,401.39 | -$885.13 |
| | 3875 S. Clement Street | $ 967,151.00 | $967,151.36 | $967,151.36 | -$4,617.33 |
| | 1743-45 N. Franklin Place | $ 205,858.00 | $205,858.36 | $205,858.36 | -$982.80 |
| | 2624 N. Fratney Street | $ 189,599.00 | $189,946.97 | $189,946.97 | -$906.84 |
| | 2943 N. Fratney Street | $ 99,639.00 | $99,872.32 | $99,872.32 | -$476.81 |
| | 1815 N. Humboldt Avenue | $ 202,746.00 | $203,119.81 | $203,119.81 | -$969.73 |
| | 2568 N. Newhall Street | $ 197,718.00 | $197,941.98 | $197,941.98 | -$945.01 |
| | 4912 W. Oklahoma Avenue | $ 363,949.00 | $363,949.39 | $363,949.39 | -$1,737.55 |
| | 1579-81 N. Warren Avenue | $ 264,997.00 | $265,618.45 | $265,618.45 | -$1,268.10 |
| | Total | $4,111,778.00 | $4,113,948.74 | **$4,113,948.74** | **-$19,640.62** |
| 3C | **North Shore Bank** | | | | |
| | 2940 N. Maryland Avenue | $ 231,308.83 | | $231,308.83 | -$1,104.30 |
| | **Total** | **$231,308.83** | | **$231,308.83** | **-$1,104.30** |

*Exhibit 2*
*Claim Summary*

| | | | | | |
|---|---|---|---|---|---|
| **3D** | **Securant Bank & Trust** | | | | |
| | 2151 S. Robinson Ave., 300 E. Ward | $1,719,002.00 | | $1,719,002.00 | -$8,206.78 |
| | **Total** | **$1,719,002.00** | | **$1,719,002.00** | **-$8,206.78** |
| | | | | | |
| **3E** | **Waterstone Bank** | | | | |
| | 1555-57 N. 48th Street | $164,059.42 | $165,492.62 | $165,492.62 | -$790.09 |
| | 1627 E. Belleview Place | $177,811.61 | $179,246.28 | $179,246.28 | -$855.75 |
| | 1712 E. Belleview Place | $179,601.00 | $180,733.52 | $180,733.52 | -$862.85 |
| | 2834 N. Bremen Street | $123,315.54 | $124,967.37 | $124,967.37 | -$596.61 |
| | 2850 N. Bremen Street | $138,262.90 | $140,211.88 | $140,211.88 | -$669.39 |
| | 437-37A E. Dover Street | $131,674.88 | $133,239.45 | $133,239.45 | -$636.11 |
| | 2859-61 S. Ellen Street | $133,141.50 | $134,447.96 | $134,447.96 | -$641.88 |
| | 1643-45 N. Franklin Place | $225,289.74 | $227,264.46 | $227,264.46 | -$1,085.00 |
| | 2449 N. Fratney Street | $95,191.05 | $96,113.46 | $96,113.46 | -$458.86 |
| | 2543 S. Graham Street | $142,125.12 | $142,901.83 | $142,901.83 | -$682.24 |
| | 3134 S. Hanson Street | $124,155.16 | $125,420.18 | $125,420.18 | -$598.78 |
| | 2425-2427 S. Howell Avenue | $127,767.51 | $128,991.30 | $128,991.30 | -$615.82 |
| | 2625-2627 S. Howell Avenue | $161,754.01 | $163,594.37 | $163,594.37 | -$781.02 |
| | 3017 N. Humboldt Avenue | $210,201.64 | $212,019.60 | $212,019.60 | -$1,012.21 |
| | 1323 E. Kane Place | $111,315.53 | $112,437.26 | $112,437.26 | -$536.79 |
| | 1327 E. Kane Place | $111,057.00 | $112,007.72 | $112,007.72 | -$534.74 |
| | 3114 N. Newhall Street | $182,215.95 | $184,264.31 | $184,264.31 | -$879.71 |
| | 4908 W. Oklahoma Avenue | $129,289.71 | $130,045.12 | $130,045.12 | -$620.86 |
| | 2526 N. Pierce Street | $105,803.37 | $106,744.40 | $106,744.40 | -$509.61 |
| | 3035 N. Pierce Street | $113,228.11 | $114,596.02 | $114,596.02 | -$547.10 |
| | 2632 S. Pine Avenue | $118,927.24 | $119,844.70 | $119,844.70 | -$572.16 |
| | 1117 E. Potter Avenue | $151,861.00 | $153,801.55 | $153,801.55 | -$734.27 |
| | 2188 S. Robinson Avenue | $292,728.95 | $296,523.29 | $296,523.29 | -$1,415.65 |
| | 1652-54 N. Warren Avenue | $182,527.59 | $184,384.00 | $184,384.00 | -$880.28 |
| | 1656 N. Warren Avenue | $199,329.39 | $200,911.02 | $200,911.02 | -$959.18 |
| | 1857-59 N. Warren Avenue | $283,823.63 | $286,357.84 | $286,357.84 | -$1,367.12 |
| | 1863 N. Warren Avenue | $562,770.11 | $567,771.37 | $567,771.37 | -$2,710.63 |
| | 1863 N. Warren Avenue (2nd) | | $51,486.06 | $51,486.06 | -$245.80 |
| | 2620 N. Weil Street | $177,584.19 | $179,234.95 | $179,234.95 | -$855.70 |
| | 2869 N. Weil Street | $189,377.77 | $191,176.30 | $191,176.30 | -$912.70 |
| | **Total** | **$5,046,190.62** | $5,146,230.19 | **$5,146,230.19** | **-$24,568.89** |
| | | | **Class 3A-3E Grand Total** | **$11,388,782.86** | **-$54,371.79** |
| | | | | | |
| **4A** | **The $437.97 Family Limited Partnership** | | | | |
| | 2625-2627 S. Howell Avenue | $36,280.64 | | $9,845.99 | -$36.39 |
| | **Total** | **$36,280.64** | | **$9,845.99** | **-$36.39** |
| | | | | | |
| **4B** | **81302 Family Limited Partnership** | | | | |
| | 437 E. Dover Street | $29,887.05 | | $10,925.12 | -$40.38 |
| | 1117 E. Potter Avenue | $29,211.35 | | $6,639.00 | -$24.54 |
| | **Total** | **$59,098.40** | | **$17,564.12** | **-$64.92** |

*Exhibit 2*
*Claim Summary*

| | | | | | |
|---|---|---|---|---|---|
| **4C** | **Jerome Porubcan IRA** | | | | |
| | 2859-61 S. Ellen Street | $27,043.00 | | $27,043.00 | -$99.96 |
| | 2632 S. Pine Street | $28,057.00 | | $28,057.00 | -$103.70 |
| | **Total** | **$55,100.00** | | **$55,100.00** | **-$203.66** |
| | | | | | |
| **4D** | **Account #33884's IRA** | | | | |
| | 3875 S. Clement Street | $61,404.36 | | $61,404.36 | -$226.96 |
| | 2543 S. Graham Street | $38,935.03 | | $24,174.88 | -$89.36 |
| | 2940 N. Maryland Avenue | $46,923.29 | | $46,923.29 | -$173.44 |
| | 4908 W. Oklahoma Avenue | $46,240.38 | | $45,610.29 | -$168.58 |
| | **Total** | **$193,503.06** | | **$178,112.82** | **-$658.34** |
| | | | | | |
| **4E** | **Richard C. Barkow** | | | | |
| | 1654 N. Warren Avenue | | | $84,472.41 | -$312.23 |
| | 1857-59 N. Warren Avenue | | | $35,876.37 | -$132.61 |
| | 1656 N. Warren Avenue | $400,000.00 | | $0.00 | $0.00 |
| | 2608 N. Bartlett | | | $0.00 | $0.00 |
| | 2940 N. Maryland Avenue | | | $8,767.88 | -$32.41 |
| | **Total** | **$400,000.00** | | **$129,116.66** | **-$477.24** |
| | | | | | |
| **4F** | **RMOR, LLC** | | | | |
| | 1555-57 N. 48th Street | $51,861.15 | | $0.00 | $0.00 |
| | 2608 N. Bartlett, 1700 E. Belleview | $103,722.00 | | $67,503.02 | -$249.50 |
| | 2425-2427 S. Howell Avenue | $59,125.68 | | $20,032.49 | -$74.04 |
| | **Total** | **$214,708.83** | | **$87,535.51** | **-$323.55** |
| | | | | | |
| **4G** | **Joyful Homes, LLC** | | | | |
| | 2449 N. Fratney Street | $42,927.00 | | $32,012.88 | -$118.33 |
| | 3134 S. Hanson Street | $42,927.00 | | $0.00 | $0.00 |
| | 2869 N. Weil Street | $42,926.53 | | $23,522.23 | -$86.94 |
| | 1323 E. Kane Place | $32,012.88 | | $0.00 | $0.00 |
| | 1579-81 N. Warren Avenue | $32,012.88 | | $0.00 | $0.00 |
| | 1656 N. Warren Avenue | $61,198.00 | | $45,170.61 | -$166.96 |
| | 3023 N. Bremen Street | $61,198.32 | | $11,868.55 | -$43.87 |
| | 2834 N. Bremen Street | $61,198.00 | | $7,384.46 | -$27.29 |
| | 2850 N. Bremen Street | $32,012.88 | | $22,437.10 | -$82.93 |
| | **Total** | **$408,413.49** | | **$142,395.83** | **-$526.32** |
| | | **Class 4A-4G Grand Total** | | **$619,670.93** | **-$2,290.42** |
| | | | | | |
| **5** | **Unsecured Creditors** | | | | |
| | A The $437.97 Family Limited Partnership | $26,434.65 | | $26,434.65 | **$88.12** |
| | B 81302 Family Limited Partnership | $41,534.28 | | $41,534.28 | **$138.45** |
| | C Eq. Trust (Jerome Porubca) | $0.00 | | $0.00 | **$0.00** |
| | D ETC FBO Acct. #33884 | $15,390.24 | | $15,390.24 | **$51.30** |
| | E Richard C. Barkow | $270,883.00 | | $186,411.34 | **$621.37** |
| | F RMOR, LLC | $127,173.32 | | $127,173.32 | **$423.91** |
| | G Joyful | $266,017.66 | | $266,017.66 | **$886.73** |
| | Alpine Plumbing | $17,840.00 | | $17,840.00 | **$59.47** |
| | Benchmark Land Technology | $0.00 | $3,439.20 | $3,439.20 | **$11.46** |
| | Bliffert Lumber | $47,283.24 | | $47,283.24 | **$157.61** |
| | Burleigh Glass | $406.56 | | $406.56 | **$1.36** |
| | Dakota Drywall | $11,841.50 | | $11,841.50 | **$39.47** |
| | Dean's Maintenance Service | $1,725.00 | | $1,725.00 | **$5.75** |
| | Milwaukee, City of (DNS) | $0.00 | | $0.00 | **$0.00** |
| | Eagle Electric | $37,906.46 | | $37,906.46 | **$126.35** |
| | Mared Mechanical | $3,136.00 | | $3,136.00 | **$10.45** |
| | Milwaukee Water Works | $39,478.00 | | $39,478.00 | **$131.59** |
| | Standard Roofing | $3,344.56 | | $3,344.56 | **$11.15** |
| | Stigler Construction (Joel Stigler) | $0.00 | | $0.00 | **$0.00** |
| | We Energies | $2,193.13 | | $2,193.13 | **$7.31** |
| | **Total** | **$912,587.60** | | **$831,555.14** | **$2,771.85** |

*Exhibit 3: Big Whale, LLC*
*Cash Flow Projection*

| 2011 Big Whale Projections | January | February | March | April | May | June | July | August | Sept. | Oct. | Nov. | Dec. | 2011 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | | | |
| Rental Income | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $116,939 | $1,403,270 |
| Vacancies (4%) | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$4,678 | -$56,131 |
| Revenue Total | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $112,262 | $1,347,139 |
| **Operating Expenses** | | | | | | | | | | | | | |
| *Property Management* | | | | | | | | | | | | | |
| Maintenance Fee (Centro) | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$3,368 | -$40,414 |
| Materials/Repairs Costs | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$1,500 | -$18,000 |
| Mgmt. Fee (MKE Rents) | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$7,016 | -$84,196 |
| *Utilities* | | | | | | | | | | | | | |
| WeEnergies | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$2,762 | -$33,144 |
| Milwaukee Water Works | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$2,276 | -$27,318 |
| Garbage Disposal | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$200 | -$2,400 |
| AT&T | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$50 | -$600 |
| **Non-Operating Expenses** | | | | | | | | | | | | | |
| *Tax Escrows* | | | | | | | | | | | | | |
| Milwaukee County | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$26,537 | -$318,445 |
| Insurance | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$2,999 | -$35,986 |
| Legal Expenses | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$500 | -$6,000 |
| **Plan Payments** | | | | | | | | | | | | | |
| Class 2 Priority Claims | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$4,316 | -$51,791 |
| Class 3 Secured Lenders | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$54,372 | -$652,461 |
| Class 4 Secured Lenders | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$2,917 | -$35,009 |
| Class 5 Unsecured Lenders | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$2,210 | -$26,518 |
| Class 5 General Unsecureds | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$551 | -$6,606 |
| **Total Expenses** | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$111,574 | -$1,338,890 |
| **Cash Balance** | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $687 | $8,249 |

*Exhibit 4: Big Whale, LLC*
*Liquidation Analysis* [1]

| | Scheduled Value | Est. Costs of | Estimated Net Liquidation | Amt. to pay to Secured | Balance Availabl | Notes |
|---|---|---|---|---|---|---|
| Sale of Real Property & Fixtures[2] | $12,149,800 | $728,988 | $11,420,812 | $11,420,812 | $0 | Broker's fee of 6% |
| Cash Accounts (as of 4/30/11)[3] | $105,334 | $0 | $105,334 | $105,334 | $0 | |
| Accounts Receivable[3] | $35,051 | $7,010 | $28,041 | $20,000 | $0 | Collection costs at 20%. |
| Personal Property | | | $0 | $0 | $0 | |
| Avoidable Transfers | | | $0 | | $0 | |
| Totals | $12,290,185 | $735,998 | $11,554,187 | $11,546,146 | $0 | |
| Administrative Fees | $36,242 | | | | $0 | |
| Amount remaining to pay unsecured creditors: | | | | | **$0** | |
| Proposed Dividend to Unsecureds in Ch. 7 Scenario[4] | | | | | 0 | |

Notes:

[1] This sheet is a liquidation analysis in the event this case were converted to a Chapter 7 as of 3/10/11. The total amount owed to secured creditors is 12,443,550

[2] Real Property value as scheduled is based off of the tax assessed values.

[3] Cash Accounts and AR values as reflected on the Debtor's April Operating Report

[4] The Debtor's analysis shows Class 5 Unsecured Creditors receiving no distribution in a Chapter 7 liquidation.