## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

---

**In the Matter of**

      **THE BIG WHALE, LLC,**           **Case No. 11-23756-jes**

          **Debtor.**

---

## PLAN OF REORGANIZATION

---

The Big Whale, LLC, as a debtor in possession, proposes the following plan of reorganization in its case pursuant to 11 U.S.C. § 1121:

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. The terms defined shall be equally applicable to both the singular and plural forms of each term unless the context otherwise requires. Any term used in the Plan that is not defined here, but that is defined in the Code shall have the meaning assigned to that term in the Code. Any term used in initially capitalized form in the Plan shall have the same meaning in the disclosure statement, filed with the Plan, unless the context otherwise requires.

    1.1    *33884 IRA* shall mean Individual Retirement Account Number 33884, serviced by Equity Trust Company.

    1.2    *43797 LP* shall mean The $437.97 Family Limited Partnership.

Justin M. Mertz
Jerome R. Kerkman
Kerkman & Dunn
757 N. Broadway, Suite 300
Milwaukee, WI 53203
Phone: 414.277.8200
Fax:   414.277.0100
jmertz@kerkmandunn.com

1.3     *81302 LP* shall mean 81302 Family Limited Partnership.

1.4     *Administrative Expense* shall mean any claim, as defined by the Code, which arises after the Petition Date and constitutes (i) an unpaid or unreimbursed cost or expense of administering either Chapter 11 case allowed under the Code including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor; (ii) any actual and necessary expense of operating the business of the Debtor; (iii) any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or for the procurement of services; (iv) any costs or expenses of the Reorganized Debtor for the administration and implementation of the Plan, for the administration, prosecution or defense of any Claim by or against the Debtor, and for administration of the Plan; and (v) any allowances of compensation and reimbursement of expenses to the extent allowed by the Final Order, whether arising before or after the Effective Date.

1.5     *Allowed Claim* shall mean any Claim (a) with respect to which a proof of claim has been filed with the Bankruptcy Court on or before the date to be fixed as provided by the Bankruptcy Court pursuant to Rule 3003; or (b) scheduled in the list of creditors prepared and filed pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount; and for either (a) or (b), any Claim for which no objection has been filed within the applicable limitation fixed by Rule 3007 or by a Bankruptcy Court order, or any Claim for which any such objection has been resolved by an order no longer subject to appeal or for which no appeal is pending.

1.6     *Allowed Priority Claim* shall mean an Allowed Claim for which the holder asserts, and is determined to be entitled to, priority under § 507 of the Code or under any other provision of the Code including, without limitation, Claims for Administrative Expenses and tax claims.

2

1.7     *Allowed Secured Claim* shall mean an Allowed Claim secured by a valid and enforceable lien, security interest, mortgage or other recognized interest in property in which the Debtor has an interest, which is not void or voidable under any state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code. The portion of an Allowed Claim that is not an Allowed Secured Claim shall be an Allowed Unsecured Claim except as otherwise provided for herein.

1.8     *Allowed Unsecured Claim* shall mean any Allowed Claim that is not an Allowed Secured Claim, an Allowed Priority Claim, a Convenience Claim, or an Administrative Expense.

1.9     *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Eastern District of Wisconsin and any federal court with concurrent or appellate jurisdiction.

1.10    *Barkow* shall mean Richard C. Barkow.

1.11    *Benchmark* shall mean Benchmark Land Technology, Inc.

1.12    *Cash* shall mean by a check drawn on the Debtor's bank account which has sufficient funds to pay the check when it is presented to the Debtor's bank.

1.13    *Centro* shall mean Centro Construction & Development, LLC, an Insider of the Debtor.

1.14    *Claim* shall mean any right to payment, or right to an equitable remedy for breach of contract or performance if such breach gives rise to a right of payment, asserted against the Debtor that was in existence on or as of the Petition Date, whether or not the right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

1.15    *Class* shall mean the classes specified in Article III of the Plan.

1.16    *Code* shall mean title 11 of the United States Code as amended from time to time.

1.17    *Confirmation Date* shall mean the date upon which the Confirmation Order entered pursuant to § 1129 of the Code is entered on the Bankruptcy Court's docket.

1.18    *Confirmation Order* shall mean the order entered by the Bankruptcy Court confirming the Plan.

1.19    *Creditor* shall mean any Person or entity that has a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including a Claim against the Debtor's estate under §§ 502(g) or 502(i) of the Code.

1.20    *Cure Amount* shall mean the monetary amount necessary to cure any defaults of an executory contract or unexpired lease through the Confirmation Date.

1.21    *Debtor* shall mean The Big Whale, LLC.

1.22    *Disputed Claim* shall mean a Claim against the Debtor the allowance of which, in whole or in part, is the subject of a timely objection; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against the Debtor's estate, Disputed Claim shall mean the lesser of (a) the total amount of Disputed Claims as filed with the Bankruptcy Court or (b) the total amount of Disputed Claims as estimated by the Bankruptcy Court pursuant to § 502(c) of the Code; and, provided, further, that in the event the Bankruptcy Court estimated a Disputed Claim for purposes of allowance pursuant to § 502(c), that estimation shall constitute the Allowed Claim.

1.23    *Effective Date* shall mean the date when all of the conditions set forth in Article X of the Plan have been satisfied or waived.

1.24    *Final Order* shall mean an order entered by the Bankruptcy Court as to which the time to appeal or to seek review or rehearing has expired and as which no appeal or other proceedings for review or rehearing shall then be pending.

4

1.25    *Insider* shall have the meaning as it is defined in 11 U.S.C. § 101(31).

1.26    *Joyful* shall mean Joyful Homes, LLC.

1.27    *Lindners* shall mean Steve Lindner and Debra Lindner, brother and sister, who are the principal owners of the Debtor.

1.28    *Lindner LLCs* shall mean the seven limited liability companies that collectively, with the Debtor, owned the Properties prior to the petition date, including: Carley, LLC; Dexter, LLC; Maddie, LLC; Shiloh, LLC a/k/a Shiloh Holdings, LLC; Westfield Holdings, LLC; Wilson Holdings, LLC; and Barkow Industries, LLC.

1.29    *M&I* shall mean M&I Marshall & Ilsley Bank.

1.30    *Milwaukee Rents* shall mean Milwaukee Rents, LLC, and Insider of the Debtor.

1.31    *Net Monthly Cash Flow* shall mean the sum of incoming Cash and outgoing Cash realized in the Reorganized Debtor's normal business operations for a one-month period.

1.32    *North Shore* shall mean North Shore Bank FSB, which acquired Maritime Savings Bank.

1.33    *Person* means any individual, corporation, general partnership, limited partnership, association, limited liability company, joint stock company, joint venture, estate, unincorporated organization, government or any political subdivision thereof, governmental unit, or other entity.

1.34    *Petition Date* shall mean March 21, 2011, the date on which the Debtor filed its voluntary petition for reorganization under Chapter 11 of the Code.

1.35    *Plan* shall mean this Chapter 11 plan of reorganization and any amendment, modification or alteration thereto in accordance with the Code.

1.36    *Porubcan IRA* shall mean the Individual Retirement Account of Jerome Porubcan, serviced by Equity Trust Company.

5

1.37    *Prepetition Loan Documents* means all of the instruments and contracts that existed before the Petition Date between the Creditor and the Debtor (or the Lindners and the Lindner LLCs as the case may be) as (i) amended by the Plan or an order entered by the Court during this case but (ii) excluding any effect of a provision described in § 365(b)(2) of the Code that would act as a default immediately before the Effective Date.

1.38    *Properties* shall mean the 49 real parcels owned by the Debtor as of the Petition Date.

1.39    *Pro-Rata Share* shall mean, with respect to any holder of an Allowed Claim, an amount calculated by and reduced to the proportion that the amount of the Claim bears to the aggregate amount of all Claims in the same Class.

1.40    *Reorganized Debtor* shall mean the Debtor after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

1.41    *RMOR* shall mean RMOR, LLC.

1.42    *Securant* shall mean Securant Bank & Trust.

1.43    *Secured Claim* shall mean any Claim against the Debtor secured by a valid and enforceable lien, security interest, mortgage or interest in property in which the Debtor has an interest, which is not void or voidable under state or federal law, or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code.

1.44    *Security Deposit Claimants* shall mean any claims of the various tenants with regard to any security deposit paid to the Debtor (or Milwaukee Rents) before the Petition Date pursuant to the terms of a Tenant Lease.

1.45    *Tenant Lease(s)* shall mean the executory contract(s) and/or unexpired lease(s) entered into between the Debtor (which may have been executed by Milwaukee Rents, the

Lindners, or Tosha Lindner as the case may be) and each respective tenant for the lease of one or more of the Debtor's Properties, or a portion of a Property of the Debtor.

1.46    *Unsecured Claim* shall mean any Claim other than a Secured Claim, a Priority Claim, a Trust Fund Claim, an Administrative Expense, or an equity interest.

1.47    *WaterStone* shall mean Waterstone Bank.

1.48    *Wells Fargo* shall mean Wells Fargo Bank, N.A., as Indenture Trustee for American Home Mortgage Investment Trust 2004-2.

1.49    *Welsch IRA* shall mean the individual retirement account of Kathleen G. Welsch, serviced by Equity Trust Company.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan classifies the Claims against the Debtor as follows:

2.1    Class 1 shall consist of all Administrative Expenses.

2.2    Class 2 shall consist of all Allowed Secured and Priority Claims of the City of Milwaukee and/or Milwaukee County, and other taxing authorities which are entitled to priority pursuant to § 507(a)(8) of the Code.

2.3    Class 3A shall consist of the Allowed Secured Claim of Wells Fargo.

2.4    Class 3B shall consist of the Allowed Secured Claim of M&I.

2.5    Class 3C shall consist of the Allowed Secured Claim of North Shore.

2.6    Class 3D shall consist of the Allowed Secured Claim of Securant.

2.7    Class 3E shall consist of the Allowed Secured Claim of WaterStone.

2.8    Class 4A shall consist of the Allowed Secured Claim of 43797 LP.

2.9    Class 4B shall consist of the Allowed Secured Claim of 81302 LP.

7

2.10    Class 4C shall consist of the Allowed Secured Claim of Porubcan IRA.

2.11    Class 4D shall consist of the Allowed Secured Claim of 33884 IRA.

2.12    Class 4E shall consist of the Allowed Secured Claim of Barkow.

2.13    Class 4F shall consist of the Allowed Secured Claim of RMOR.

2.14    Class 4G shall consist of the Allowed Secured Claim of Joyful.

2.15    Class 4H shall consist of the Allowed Secured Claim of Welsch IRA.

2.16    Class 5 shall consist of the Allowed Unsecured Claims that are not included in

Classes 1 through 4H.

2.17    Class 6 shall consist of the Allowed Equity Interests in the Debtor.

### ARTICLE III
### TREATMENT OF CLAIMS AND INTEREST

A summary of Claims and the classification of each as described in Article 3 of the Plan is

attached to this Plan and incorporated herein as Addendum 3.0.  In the "description" column on

Addendum 3.0 is a listing of the Collateral of each Creditor in Classes 3A through 3E and 4A

through 4H, which are listed below.

3.1    *Class 1: Administrative Expenses.* Administrative Expenses in Class 1 are

unimpaired under the Plan and shall be paid (i) in full in Cash on or before the Effective date, (ii)

upon such other terms as may be agreed to in writing by the holder of any Allowed Expense in

Class 1 and the Debtor, or (iii) if such expense is allowed after the Effective Date, as soon as such

expense is allowed.  Administrative Expenses in the ordinary course of business by the Debtor

after the Petition Date shall be paid in the ordinary course.  An Administrative Expense for which

notice of intent to assert the Administrative Expense was required to be filed by an order of the

Bankruptcy Court and was not filed shall not be paid, and such Administrative Expense shall be

8

forever discharged and barred, and subject to injunctive relief provided for by §§ 1141 and 524 of the Code.

3.2    *Class 2: Allowed Priority Tax Claims.*  The Allowed Claims in Class 2 are impaired under the Plan.  The members of Class 2 shall consist of the City of Milwaukee and/or Milwaukee County, which hold Claims for property taxes.  The members in Class 2 will be paid in full in equal monthly installments of principal and interest at the rate specified by 11 U.S.C. § 511 over a term of 60 months from the Petition Date, with payments commencing on the twentieth day of the first month following the Effective Date.

3.3    *Classes 3A through 3E:*

(a)    *Class 3A: Allowed Secured Claim of Wells Fargo.*  The Allowed Secured Claim of Wells Fargo in Class 3A is impaired.  Wells Fargo's total Claim is deemed to be an Allowed Secured Claim of $178,293 as of the Petition Date.  Wells Fargo shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  Wells Fargo's Allowed Secured Claim will be paid by the Reorganized Debtor in equal monthly installments of principal with fixed interest at the rate of 4.5% per annum amortized over 35 years with a 7-year term, with no prepayment penalty.  Wells Fargo shall release its Liens on its Collateral in the event the balance of the amount allocated to such piece of Collateral is paid in full.  The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid.  Wells Fargo's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(b)    *Class 3B: Allowed Secured Claim of M&I.*  The Allowed Secured Claim of M&I in Class 3B is impaired.  M&I's total Claim is deemed to be an Allowed Secured Claim of

9

$4,113,949 as of the Petition Date. M&I shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. M&I's Allowed Secured Claim will be paid by the Reorganized Debtor in equal monthly installments of principal with fixed interest at the rate of 4% per annum amortized over 30 years with a 5-year term, with no prepayment penalty. M&I's Allowed Secured Claim shall be allocated across the individual pieces of Collateral in the amounts reflected on Addendum 3.0; M&I shall release its Liens on any individual piece of Collateral in the event the balance of the amount allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. M&I's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(c)     *Class 3C: Allowed Secured Claim of North Shore.* The Allowed Secured Claim of North Shore in Class 3C is impaired. North Shore's total Claim is deemed to be an Allowed Secured Claim of $234,264 as of the Petition Date. North Shore shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. North Shore's Allowed Secured Claim will be paid by the Reorganized Debtor in equal monthly installments of principal with fixed interest at the rate of 4% per annum amortized over 30 years with a 5-year term, with no prepayment penalty. North Shore shall release its Liens on any individual piece of Collateral in the event the balance of the amount allocated to such piece of Collateral is paid in full. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. North Shore's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

10

(d)     *Class 3D:  Allowed Secured Claim of Securant.*  The Allowed Secured Claim of Securant in Class 3D is impaired.  Securant's total Claim is deemed to be an Allowed Secured Claim of $1,736,663 as of the Petition Date.  Securant shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  Securant's Allowed Secured Claim will be paid by the Reorganized Debtor in equal monthly installments of principal with fixed interest at the rate of 4.25% per annum amortized over 30 years with a 7-year term, with no prepayment penalty.  Securant shall release its liens on its Collateral in the event the balance of the amount allocated to such piece of Collateral is paid in full.  The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid.  Securant's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.

(e)     *Class 3E:  Allowed Secured Claim of WaterStone.*  The Allowed Secured Claim of WaterStone in Class 3E is impaired.  WaterStone's total claim is deemed to be an Allowed Secured Claim of $5,146,230 as of the Petition Date.  WaterStone shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  WaterStone's Allowed Secured Claim will be paid in equal monthly installments of principal with fixed interest at the rate of 4.25% per annum amortized over 30 years with a 7-year term, with no prepayment penalty.  WaterStone's Allowed Secured Claim shall be allocated across the individual pieces of Collateral in the amounts reflected on Addendum 3.0; WaterStone shall release its Liens on any individual piece of Collateral in the event the balance of the amount allocated to such piece of Collateral is paid in full.  The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid.  WaterStone's Prepetition Loan Documents shall remain in full force and effect to

11

the extent they are not altered by the Plan.

3.4     *Classes 4A through 4H:*

(a)     *Class 4A: Allowed Secured Claim of 43797 LP.*  The Total Claim of Class 4A is partially secured and partially unsecured and is impaired under the Plan.  43797 LP is deemed to have an Allowed Secured Claim of $37,000 as of the Petition Date.  43797 LP shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  43797 LP's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months.  The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid.  43797 LP's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.  Any remaining Allowed Unsecured Claim of Class 4A shall be paid as a Class 5 Unsecured Claim.

(b)     *Class 4B: Allowed Secured Claim of 81302 LP.*  The Total Claim of Class 4B is partially secured and partially unsecured and is impaired under the Plan.  81302 LP is deemed to have an Allowed Secured Claim of $91,307 as of the Petition Date.  81302 LP shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  81302 LP's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months.  The monthly

12

installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. 81302 LP's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4B shall be paid as a Class 5 Unsecured Claim.

(c)  *Class 4C: Allowed Secured Claim of Porubcan IRA*.  The Total Claim of Class 4C is partially secured and partially unsecured and is impaired under the Plan.  Porubcan IRA is deemed to have an Allowed Secured Claim of $58,681 as of the Petition Date.  Porubcan IRA shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. Porubcan IRA's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months.  The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid.  Porubcan IRA's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan.  Any remaining Allowed Unsecured Claim of Class 4C shall be paid as a Class 5 Unsecured Claim.

(d)  *Class 4D: Allowed Secured Claim of 33884 IRA*.  The Total Claim of Class 4D is partially secured and partially unsecured and is impaired under the Plan.  33884 IRA is deemed to have an Allowed Secured Claim of $204,443 as of the Petition Date.  33884 IRA shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan.  33884 IRA's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum,

13

interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. 33884 IRA's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4D shall be paid as a Class 5 Unsecured Claim.

(e)     *Class 4E: Allowed Secured Claim of Barkow.* The Total Claim of Class 4E is partially secured and partially unsecured and is impaired under the Plan. Barkow is deemed to have an Allowed Secured Claim of $129,117 as of the Petition Date. Barkow shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. Barkow's Allowed Secured Claim will be paid in equal monthly installments of principal with fixed interest at the rate of 4% per annum amortized over 30 years with no prepayment penalty. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. Barkow's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4E shall be paid as a Class 5 Unsecured Claim.

(f)     *Class 4F: Allowed Secured Claim of RMOR.* The Total Claim of Class 4F is partially secured and partially unsecured and is impaired under the Plan. RMOR is deemed to have an Allowed Secured Claim of $195,666 as of the Petition Date. RMOR shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. RMOR's Allowed

14

Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. RMOR's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4F shall be paid as a Class 5 Unsecured Claim.

   (g) *Class 4G: Allowed Secured Claim of Joyful.* The Total Claim of Class 4G is partially secured and partially unsecured and is impaired under the Plan. Joyful is deemed to have an Allowed Secured Claim of $379,947 as of the Petition Date. Joyful shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. Joyful's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. Joyful's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4G shall be paid as a Class 5 Unsecured Claim.

   (h) *Class 4H: Allowed Secured Claim of Welsch IRA.* The Total Claim of Class 4H is partially secured and partially unsecured and is impaired under the Plan. Welsch IRA is deemed to have an Allowed Secured Claim of $72,668 as of the Petition Date. Welsch IRA

shall retain its Liens on its Collateral to secure the obligations due to it pursuant to the Plan. Welsch IRA's Allowed Secured Claim will be paid as follows: monthly payments of 4% per annum, interest only for 2 years from the Effective Date; and after such time, in equal monthly installments of principal with fixed interest at a mutually agreed-upon rate, amortized over 30 years with no prepayment penalty with a balloon payment after 60 months. The monthly installments will commence on the 20th day of the first month after the Effective Date and will be paid on the 20th day of each subsequent month until the full principal amount is paid. Welsch IRA's Prepetition Loan Documents shall remain in full force and effect to the extent they are not altered by the Plan. Any remaining Allowed Unsecured Claim of Class 4H shall be paid as a Class 5 Unsecured Claim.

3.5 *Class 5: Allowed Unsecured Claims.* Allowed Claims in Class 5 are impaired under the Plan. Each Creditor in Class 5 shall receive a dividend equal to 20% of its Allowed Unsecured Claim. The 20% dividend shall be paid in equal monthly installments without interest over the course of 60 months commencing on the 20th day of the first month following the Effective Date.

3.6 *Class 6: Equity Interests in the Debtor.* The Interests in Class 6 are unimpaired and unaffected under the Plan. They shall retain their Interests.

3.7 *Prepayment Without Penalty.* At any time, the Reorganized Debtor may prepay, without penalty, any of its obligations under the Plan to any Creditor if the Debtor or Reorganized Debtor has the ability to do so and otherwise complies with its obligations within the terms and as required under the Plan.

3.8 *Assumption of Liens and Encumbrances.* The Reorganized Debtor shall assume the obligations of the Prepetition Loan Documents, as amended by the Plan, that encumber and

16

affect the Properties that are Collateral for the Liens held by the Creditors in Classes 3A through 3E and Classes 4A through 4H. The Reorganized Debtor shall execute documents as reasonably required by the Creditor (and any title company) to evidence the assumption and mortgage and note amendments contemplated by the Plan. Prepetition Loan Documents shall remain in effect; however, insolvency provisions or any provision requiring financial performance such as covenant to maintain a certain net worth, debt ratio, etc., are amended to be consistent with the financial projections attached to the Disclosure Statement.

       3.9    *Personal Guaranties of Claims*. The Prepetition Loan Documents for any Creditor's Claim that will be in effect after the Effective Date are deemed amended as to any Creditor or Claimant that affirmatively votes to accept the Plan so that the obligations of the Lindners, the Debtor, or the Lindner LLCs conforms with the provisions of the Plan and any default existing before the Effective Date is waived. Any valid pre-petition guaranty shall continue after the Effective Date as modified by the Plan. The Debtor, the Lindners, and the Lindner LLCs agree to re-execute amended guaranties consistent with this provision.

## ARTICLE IV
## PROVISION FOR TREATMENT OF DISPUTED CLAIMS

       4.1    *Objection to Claims; Prosecution of Disputed Claims.* The Debtor or the Reorganized Debtor shall object to the allowance of any Claims filed with the Bankruptcy Court with respect to which the Debtor or Reorganized Debtor dispute liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that the Reorganized Debtor may compromise and settle objections to Claims without notice, unless such notice is requested by any party in interest, and without the approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall serve and file all objections to

17

Claims by August 8, 2011, unless otherwise allowed by the Bankruptcy Court.

4.2     *Payments and Distributions on Disputed Claims.*  From and after the Effective

Date, the Reorganized Debtor shall hold and reserve in a segregated account, for the benefit of

each holder of a Disputed Claim, Cash in an amount equal to the Pro-Rata distribution that would

have been made to the holder of any Disputed Claim if it were an Allowed Claim in an amount

equal to the lesser of (i) the amount of the Disputed Claim or (ii) the amount in which the

Disputed Claim shall be estimated by the Bankruptcy Court pursuant to § 502 of the Code for

purposes of allowance.  Any Cash reserved and held for the benefit of a holder of a Disputed

Claim shall be treated as a payment and reduction on account of such Disputed Claim for

purposes of computing (a) any additional amounts to be paid in Cash in the event the Disputed

Claim ultimately becomes an Allowed Claim or (b) any interest payable in accordance with the

Plan by the Debtor with respect to such Disputed Claim at the time or times such cash is reserved.

Any Cash reserved for the benefit of holders of Disputed Claims shall be held by the Reorganized

Debtor in an interest-bearing account.  No payment or distribution shall be made with respect to

all or any portion of any Disputed Claim pending the entire resolution of the Claim by a Final

Order.

At the time a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder

of the Allowed Claim shall receive the payment(s) and distribution(s) to which it is then entitled

under the Plan, together with any interest that has accrued on the amount of cash so reserved, but

only to the extent that the interest is attributable to the amount of the Allowed Claim.  Such

payment(s) shall be made as soon as practicable after the date the Bankruptcy Court enters a Final

Order allowing such Claim but in no event later than 30 days after the date of the Final Order.

Any cash reserved for but not necessary to pay an Allowed Claim shall be retained by the

18

Reorganized Debtor. Disputed Claims which are disallowed shall receive nothing to the extent they are disallowed.

## ARTICLE V
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

5.1     *Cash for Payments to Creditors on and after the Effective Date.*  Except as otherwise provided for herein, payments to Creditors shall be from the regular business income of the Reorganized Debtor.

5.2     *Debtor Management.*  Except as otherwise provided for herein, the Debtor shall manage its affairs after the Effective Date.

(a)     *Property Manager.*  After the Confirmation Date, the Debtor may continue to have Milwaukee Rents act as its property manager.  With the Reorganized Debtor's assistance, Milwaukee Rents will be responsible for management of the Reorganized Debtor's leasing activities, negotiations and communications with tenants, collection of rents and other accounts receivables, payment of bills and expenses, and general data entry and record keeping.

(b)     *Property Maintenance.*  After the Confirmation Date, the Debtor may continue to have Centro maintain the Debtor's Properties.  With the Reorganized Debtor's assistance, Centro will be responsible for the physical maintenance of the Properties, including general repairs, construction, plumbing, electrical repairs, appliance repairs, and cleaning.

5.3     *Withholding Taxes.*  The Reorganized Debtor shall withhold from distributions under the Plan any property which must be withheld for taxes payable by the Person entitled to such property to the extent required by applicable law.

5.4     *Professional Fees and Expenses.*  Each Person retained or requesting compensation in this case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be

19

entitled to file an application for allowance of final compensation and reimbursement of expenses in the case by the date set by the Bankruptcy Court.

5.5    *Mailing and Unclaimed Distributions.*  All distributions made by mail will be made to (a) the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtor, or (c) any other address known to Debtor. Any unclaimed distributions which would otherwise have been disbursed to a Creditor with respect to an Allowed Claim shall be retained as property of the Reorganized Debtor if the Creditor cannot be located.

5.6    *Responsible Person.*  Except as otherwise may be provided herein, the Reorganized Debtor shall be responsible for the execution and implementation of the Plan.

5.7    *Debtor's Property After Confirmation*.  The Reorganized Debtor shall retain possession all of its property, including the Properties, which shall be free and clear of all liens and encumbrances except as provided in the Plan and encumbrances of governmental authorities and utilities for easements and services.

5.8    *Settlement of Actions Brought by the Debtor*.  The Reorganized Debtor may settle or compromise any action brought by it without notice, unless such notice is requested by any party in interest, or Bankruptcy Court approval.

5.9    *Preference, Fraudulent Conveyances and Avoidance Actions*.  Except for (i) causes of action against a Person or entity which is not a Creditor and (ii) causes of action included in any objection by the Debtor or Reorganized Debtor to a proof of claim filed by the date for such objections set by the Bankruptcy Court, the Debtor will not bring any preferential transfer, fraudulent conveyance or other avoidance action under Chapter 5 of the Code against

20

any Creditor.  All avoidance actions under Chapter 5 of the Code against Creditors preserved in the Plan vest in the Reorganized Debtor.

5.10    *Confirmation of the Plan Without Approval of Classes Entitled to Priority Over Class 6*.  If any Class is entitled to vote and votes to reject the Plan, the Debtor shall request that the Bankruptcy Court approve the Plan pursuant to § 1129(b)(1) of the Code.

5.11    *Payment of U.S. Trustee Fees*.  The Reorganized Debtor shall pay all fees due after the Confirmation Date pursuant to 28 U.S.C. § 1930 until the case is closed.

5.12    *Professional Fees*.  The Reorganized Debtor shall not pay any professional fees or costs incurred before the Confirmation Date except as approved by the Bankruptcy Court or otherwise allowed by law.  The payment of any professional fees or costs after the Confirmation Date to implement the Plan shall only be made if such fees and costs are reasonable.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    Pursuant to Rule 6006(a), all Tenant Leases that have not otherwise expired by their own terms prior to the Confirmation Date shall be assumed by the Debtor on the Confirmation Date (and assigned to the Reorganized Debtor as necessary), unless otherwise explicitly rejected prior to the Confirmation Date by a motion filed with Court.  All parties to each Tenant Lease shall retain their contractual rights pursuant to the terms of such Tenant Lease.  The Debtor is not in default of the Tenant Leases and therefore there are no amounts necessary to cure any defaults.

(a)    As part of the Tenant Leases, the Security Deposit Claimants have provided the Debtor with security deposits to secure their obligations under each Tenant Lease.  Pursuant to Wisconsin law, the Debtor does not pay interest on the security deposits. Security

21

deposits are (i) returned in the normal course of the Debtors' business, (ii) not separately escrowed by the Debtor, (iii) unimpaired by the Debtor's proposed plan of reorganization, and (iv) are therefore not specified in the plan under 11 U.S.C. § 1123(a)(3). Security deposits that must be returned to the Security Deposit Claimants pursuant to the terms of each Tenant Lease will be returned in the normal course of business.

(b)     Security Deposit Claimants are deemed to be unimpaired by the Plan and are not specifically designated as a Class. The Debtor's assumption of all Tenant Leases (unless otherwise rejected by a motion filed with the Court) requires the Debtor and the Reorganized Debtor to continue performance pursuant to the terms of each such Tenant Lease, including the return of the Security Deposit Claimants' security deposits.

(c)     The Debtor shall, on or before the Effective Date, deposit $10,000 into a separate interest-bearing bank account insured by the FDIC ("Security Escrow"). In the event a Security Deposit Claimant has a valid claim for the return of its security deposit (or a portion thereof) and the Debtor in unable to return such deposit from its normal operating account within the time period established by Wisconsin law, the Debtor shall fund the repayment of the security deposit from the Security Escrow. The Security Escrow shall be deemed to provide adequate assurance of future performance with respect to the Tenant Leases being assumed in the Plan.

6.2     All other executory contracts not specifically assumed in this Plan are rejected.

6.3     The agreements the Debtor has with Milwaukee Rents and Centro shall be assumed by the Debtor, and assigned to the Reorganized Debtor if necessary, and will continue after the Effective Date.

**ARTICLE VII**
**AMENDMENTS AND WAIVER**

22

Except as otherwise provided in the Plan and § 1127 of the Code, any term of the Plan may be amended or modified at any time, and the enforcement and observance of any term of the Plan may be waived at any time provided that all holders of Claims affected by the amendment of waiver have received notice of the proposed amendment or waiver and have not objected in writing within a reasonable period of time and, in any event, any period of time which may be set by the Bankruptcy Court.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

8.1     *Discharge of Debtor.*  Except as otherwise provided in the Plan or in the Confirmation Order, the Debtor will obtain a discharge as provided in § 1141 of the Code.  The discharge of the Debtor and Reorganized Debtor shall be effective as to each Claim regardless of whether a proof of claim was filed for such Claim, whether the Claim is an Allowed Claim, or whether the holder of the Claim, debt or liability has accepted the Plan.

8.2     *Injunction.*  The Confirmation Order will provide, *inter alia,* that, except as otherwise provided for in the Plan, all Persons who have held, hold or may hold Claims are permanently enjoined from and after the Effective Date from:

(a)     commencing and continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor, or any of its directors, officers, agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties in their representative capacities as agents or employees of the Debtor;

(b)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Reorganized Debtor or any of its officers, directors, agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any

23

such parties, or the property of such parties with respect to such Claim;

(c)     creating, perfecting or enforcing any encumbrance of any kind against the Reorganized Debtor or any of its agents, representatives, financial advisors, attorneys or accountants of any such party or against the property of any such party or property of the Debtor, with respect to any such Claim;

(d)     asserting any right of set-off, right of subrogation or recoupment of any kind against any obligation due Debtor, any of its agents, employees, representatives, financial advisors, attorneys, accountants or any affiliates of any such parties, or against the property of any such parties of the property of their affiliates, with respect to such Claim; and

(e)     commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim.

8.3     *Consummation*.  Upon substantial consummation of the Plan, the Reorganized Debtor may move for a final decree closing the Case and requesting such orders as may be just and equitable.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

The Bankruptcy Court may retain jurisdiction over this Case, until the Plan has been fully consummated, for all appropriate purposes including, but not limited to, the following:

9.1     To hear and determine all applications for compensation of professionals under §§ 330 and 331 of the Code.

9.2     To classify or reclassify the Claim of any Creditor and to resolve any and all objections filed against any Claim.  Any failure of the Reorganized Debtor to object to or to examine any Claim for purposes of voting shall not be deemed a waiver of the Reorganized

24

Debtor's right to object to or to re-examine any Claim in whole or in part.

9.3    To determine all questions and disputes arising under the Plan including those regarding title to or interests in the Reorganized Debtor's assets as well as the resolution of all Claims, causes of action, controversies, disputes or conflicts, including any preference, fraudulent conveyance or avoidance action pending as of the Confirmation Date and for which jurisdiction is specifically retained in the Plan.

9.4    To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order necessary to carry out the purposes and intent of the Plan.

9.5    To modify the Plan after confirmation.

9.6    To enforce and interpret the terms and conditions of the Plan and to enforce all of the orders entered by the Bankruptcy Court.

9.7    To enter any order, including orders for injunctive relief, necessary to enforce the title, rights and powers of the Debtor or Reorganized Debtor as well as the imposition of such restrictions, limitations, terms and conditions as the Bankruptcy Court may deem necessary.

9.8    To supervise of approve any aspect of any Claim that might be pursued on behalf of the Debtor or Reorganized Debtor or any Creditor.

9.9    To resolve all adversary actions brought in the Debtor's case.

9.10    To enter any order concluding and terminating the case.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVENESS

The Effective Date of the Plan shall occur when each of the following conditions has been met or has been waived in writing by the Debtor and such writing has been filed with the Bankruptcy Court:

25

10.1    The Confirmation Order shall have been entered by the Bankruptcy Court without any stay.

10.2    There has not been an appeal of the Confirmation Order filed.

10.3    Ten business days have passed after the last date for an appeal of the Confirmation Order to be filed.

## ARTICLE XI
## MISCELLANEOUS

11.1    The headings in the Plan are for convenience and reference only, and shall not limit or otherwise affect the text of the Plan.

11.2    The rules of construction used in Section 102 of Code shall apply to the construction of the Plan.

11.3    All fees under 28 U.S.C. § 1930, due to the U.S. Trustee, that have not been paid shall be paid within 10 days of the Confirmation Date.

11.4    The liens of all Creditors that have been discharged or avoided shall be released of record prior to any cash distribution or delivery of any property under the Plan to such Creditors.

11.5    The liens of every Creditor with a Claim that is disallowed or whose lien is avoided shall be void and shall be rendered void by the recording in the appropriate place of record of a certified copy of any order disallowing the Claim or avoiding the lien.

11.6    Any orders entered or agreements approved by the Bankruptcy Court for the use of cash collateral, for adequate protection or for payments in lieu of the lifting of the automatic stay shall be terminated.  At that time, the relationship between the respective parties shall be governed by the Plan.

11.7    Unless otherwise provided for in the Plan, no holder of an Allowed Unsecured

26

Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

11.8    Any documents necessary to effect the provisions of the Plan will be filed with the Bankruptcy Court before the hearing on confirmation.

11.9    The attorney fees and costs to administer consummation of the Plan shall be reasonable.

## ARTICLE XII
## CONCLUSION

The Plan reflects the Debtor's best efforts to reorganize its business in a manner that preserves its continued viability, advances the interests of creditors, and complies in all aspects with the requirements of the Code.

Dated: July 29, 2011.

*/s/ Justin M. Mertz*
Jerome R. Kerkman
Justin M. Mertz
Kerkman & Dunn

Attorneys for the Debtor

P.O. Address:

757 North Broadway, Suite 300
Milwaukee, WI 53202-3612
Phone:  414.277.8200
Facsimile: 414.277.0100
Email: jmertz@kerkmandunn.com

27

## The Big Whale, LLC
### Plan Addendum 3.0

| Class | Description | Amount Scheduled | Filed Claim | Estimated Allowed Amount | Monthly Plan Payment |
|---|---|---|---|---|---|
| 1 | **Administrative Expenses - Professionals** | | | | |
| | Kerkman & Dunn (3/21/11 - 7/15/11) | | | $38,219 | |
| | K&D (estimated remaining) | | | $15,000 | |
| | U. S. Trustee (estimated remaining) | | | $5,000 | |
| | Total | | | $58,219 | |
| | Less K&D remaining retainer | | | -$35,548 | |
| | Less K&D amts. Paid from operations | | | $0 | |
| | Less U.S. Trustee amts. paid | | | $0 | |
| | **Administrative Exp. paid on Confirmation** | | | **$22,671** | |
| 2 | **Priority Tax Claims** | | | | |
| | Internal Revenue Service | $0 | $0 | $0 | |
| | Milwaukee County (Property Taxes) | $231,267 | $210,349 | $210,349 | |
| | Wisconsin Dep't of Revenue | $0 | | $0 | |
| | Total | | | $210,349 | **-$4,455** |
| 3A | **Wells Fargo / American Home Mortgage** | | | | |
| | 2335-37 N. 65th Street | $175,603 | $178,293 | $178,293 | -$844 |
| | Total | $175,603 | $178,293 | **$178,293** | **-$844** |
| 3B | **M&I Marshall and Ilsley Bank** | | | | |
| | 2586-88 S. Austin Street | $277,538 | $276,232 | $276,232 | -$1,319 |
| | 2582-84 S. Austin Street | $117,252 | $117,049 | $117,049 | -$559 |
| | 2752 S. Austin Street | $157,742 | $158,031 | $158,031 | -$754 |
| | 2608 N. Bartlett, 1700 E. Belleview | $243,979 | $244,369 | $244,369 | -$1,167 |
| | 2627-29 N. Bartlett Ave. | $219,924 | $220,327 | $220,327 | -$1,052 |
| | 2752-54 N. Bremen Street | $155,465 | $155,829 | $155,829 | -$744 |
| | 3023 N. Bremen Street | $109,531 | $109,788 | $109,788 | -$524 |
| | 2432-34 S. Burrell Street | $153,289 | $153,462 | $153,462 | -$733 |
| | 1010 E. Clarke Street | $185,401 | $185,401 | $185,401 | -$885 |
| | 3875 S. Clement Street | $967,151 | $967,151 | $967,151 | -$4,617 |
| | 1743-45 N. Franklin Place | $205,858 | $205,858 | $205,858 | -$983 |
| | 2624 N. Fratney Street | $189,599 | $189,947 | $189,947 | -$907 |
| | 2943 N. Fratney Street | $99,639 | $99,872 | $99,872 | -$477 |
| | 1815 N. Humboldt Avenue | $202,746 | $203,120 | $203,120 | -$970 |
| | 2568 N. Newhall Street | $197,718 | $197,942 | $197,942 | -$945 |
| | 4912 W. Oklahoma Avenue | $363,949 | $363,949 | $363,949 | -$1,738 |
| | 1579-81 N. Warren Avenue | $264,997 | $265,618 | $265,618 | -$1,268 |
| | Total | **$4,111,778** | $4,113,949 | **$4,113,949** | **-$19,641** |
| 3C | **North Shore Bank** | | | | |
| | 2940 N. Maryland Avenue | $231,309 | $234,264 | $234,264 | -$1,118 |
| | Total | **$231,309** | | **$234,264** | **-$1,118** |

| | | | | | |
|---|---|---|---|---|---|
| **3D** | **Securant Bank & Trust** | | | | |
| | 2151 S. Robinson Ave., 300 E. Ward | $1,719,002 | $1,755,118 | $1,736,663 | -$8,543 |
| | **Total** | **$1,719,002** | $1,755,118 | **$1,736,663** | **-$8,543** |
| | | | | | |
| **3E** | **Waterstone Bank** | | | | |
| | 1555-57 N. 48th Street | $164,059 | $165,493 | $165,493 | -$814 |
| | 1627 E. Belleview Place | $177,812 | $179,246 | $179,246 | -$882 |
| | 1712 E. Belleview Place | $179,601 | $180,734 | $180,734 | -$889 |
| | 2834 N. Bremen Street | $123,316 | $124,967 | $124,967 | -$615 |
| | 2850 N. Bremen Street | $138,263 | $140,212 | $140,212 | -$690 |
| | 437-37A E. Dover Street | $131,675 | $133,239 | $133,239 | -$655 |
| | 2859-61 S. Ellen Street | $133,142 | $134,448 | $134,448 | -$661 |
| | 1643-45 N. Franklin Place | $225,290 | $227,264 | $227,264 | -$1,118 |
| | 2449 N. Fratney Street | $95,191 | $96,113 | $96,113 | -$473 |
| | 2543 S. Graham Street | $142,125 | $142,902 | $142,902 | -$703 |
| | 3134 S. Hanson Street | $124,155 | $125,420 | $125,420 | -$617 |
| | 2425-2427 S. Howell Avenue | $127,768 | $128,991 | $128,991 | -$635 |
| | 2625-2627 S. Howell Avenue | $161,754 | $163,594 | $163,594 | -$805 |
| | 3017 N. Humboldt Avenue | $210,202 | $212,020 | $212,020 | -$1,043 |
| | 1323 E. Kane Place | $111,316 | $112,437 | $112,437 | -$553 |
| | 1327 E. Kane Place | $111,057 | $112,008 | $112,008 | -$551 |
| | 3114 N. Newhall Street | $182,216 | $184,264 | $184,264 | -$906 |
| | 4908 W. Oklahoma Avenue | $129,290 | $130,045 | $130,045 | -$640 |
| | 2526 N. Pierce Street | $105,803 | $106,744 | $106,744 | -$525 |
| | 3035 N. Pierce Street | $113,228 | $114,596 | $114,596 | -$564 |
| | 2632 S. Pine Avenue | $118,927 | $119,845 | $119,845 | -$590 |
| | 1117 E. Potter Avenue | $151,861 | $153,802 | $153,802 | -$757 |
| | 2188 S. Robinson Avenue | $292,729 | $296,523 | $296,523 | -$1,459 |
| | 1652-54 N. Warren Avenue | $182,528 | $184,384 | $184,384 | -$907 |
| | 1656 N. Warren Avenue | $199,329 | $200,911 | $200,911 | -$988 |
| | 1857-59 N. Warren Avenue | $283,824 | $286,358 | $286,358 | -$1,409 |
| | 1863 N. Warren Avenue | $562,770 | $567,771 | $567,771 | -$2,793 |
| | 1863 N. Warren Avenue (2nd) | $0 | $51,486 | $51,486 | -$253 |
| | 2620 N. Weil Street | $177,584 | $179,235 | $179,235 | -$882 |
| | 2869 N. Weil Street | $189,378 | $191,176 | $191,176 | -$940 |
| | **Total** | **$5,046,191** | $5,146,230 | **$5,146,230** | **-$25,316** |
| | | | **Class 3A-3E Grand Total** | **$11,409,399** | **-$55,463** |
| | | | | | |
| **4A** | **The $437.97 Family Limited Partnership** | | | | |
| | 2625-2627 S. Howell Avenue | $36,281 | $39,641 | $37,000 | -$123 |
| | **Total** | **$36,281** | $39,641 | **$37,000** | **-$123** |
| | | | | | |
| **4B** | **81302 Family Limited Partnership** | | | | |
| | 437 E. Dover Street | $29,887 | $33,008 | $32,008 | -$107 |
| | 3035 N. Pierce | $0 | $28,992 | $27,992 | -$93 |
| | 1117 E. Potter Avenue | $29,211 | $32,307 | $31,307 | -$104 |
| | **Total** | **$59,098** | $94,307 | **$91,307** | **-$304** |
| | | | | | |
| **4C** | **Jerome Porubcan IRA** | | | | |
| | 2859-61 S. Ellen Street | $27,043 | $29,725 | $28,725 | -$96 |
| | 2632 S. Pine Street | $28,057 | $30,956 | $29,956 | -$100 |
| | **Total** | **$55,100** | $60,681 | **$58,681** | **-$196** |

| | | | | |
|---|---|---|---|---|
| **4D** | **Account #33884's IRA** | | | |
| | 3875 S. Clement Street | $61,404 | $65,453 | $64,453 | -$215 |
| | 2543 S. Graham Street | $38,935 | $42,233 | $41,233 | -$137 |
| | 2940 N. Maryland Avenue | $46,923 | $50,976 | $49,976 | -$167 |
| | 4908 W. Oklahoma Avenue | $46,240 | $49,782 | $48,782 | -$163 |
| | **Total** | **$193,503** | $208,443 | **$204,443** | **-$681** |
| | | | | | |
| **4E** | **Richard C. Barkow** | | | | |
| | 1654 N. Warren Avenue | | | $84,472 | -$403 |
| | 1857-59 N. Warren Avenue | | | $35,876 | -$171 |
| | 1656 N. Warren Avenue | $400,000 | $400,664 | $0 | $0 |
| | 2608 N. Bartlett | | | $0 | $0 |
| | 2940 N. Maryland Avenue | | | $8,768 | -$42 |
| | **Total** | **$400,000** | $400,664 | **$129,117** | **-$616** |
| | | | | | |
| **4F** | **RMOR, LLC** | | | | |
| | 1555-57 N. 48th Street | $51,861 | | $156,631 | -$522 |
| | 2608 N. Bartlett, 1700 E. Belleview | $103,722 | $214,631 | | |
| | 2425-2427 S. Howell Avenue | $59,126 | $64,035 | $39,035 | -$130 |
| | **Total** | **$214,709** | $278,666 | **$195,666** | **-$652** |
| | | | | | |
| **4G** | **Joyful Homes, LLC** | | | | |
| | 2449 N. Fratney Street | $42,927 | | | |
| | 3134 S. Hanson Street | $42,927 | $101,640 | $79,640 | -$265 |
| | 2869 N. Weil Street | $42,927 | | | |
| | 1323 E. Kane Place | $32,013 | | | |
| | 1579-81 N. Warren Avenue | $32,013 | $192,288 | $177,288 | -$591 |
| | 1656 N. Warren Avenue | $61,198 | | | |
| | 3023 N. Bremen Street | $61,198 | | | |
| | 2834 N. Bremen Street | $61,198 | $135,019 | $123,019 | -$410 |
| | 2850 N. Bremen Street | $32,013 | | | |
| | **Total** | **$408,413** | $428,947 | **$379,947** | **-$1,266** |
| | | | | | |
| **4H** | **Welsch IRA** | | | | |
| | 2188 S. Robinson | **$0** | $73,668 | **$72,668** | **-$242** |
| | | | **Class 4A-4H Grand Total** | **$1,168,829** | **-$4,082** |

**5** **Unsecured Creditors**

| | | | | |
|---|---|---|---|---|
| A The $437.97 Family Limited Partnersh | $26,434.65 | | $2,641.14 | **$8.80** |
| B 81302 Family Limited Partnership | $41,534.28 | | $3,000.00 | **$10.00** |
| C Eq. Trust (Jerome Porubca) | $2,000.00 | | $2,000.00 | **$6.67** |
| D ETC FBO Acct. #33884 | $15,390.24 | | $4,000.00 | **$13.33** |
| E Richard C. Barkow | $270,883.00 | | $271,547.01 | **-$905.16** |
| F RMOR, LLC | $127,173.32 | | $83,000.00 | **-$276.67** |
| G Joyful | $266,017.66 | | $49,000.00 | **-$163.33** |
| H Welsch IRA | $0.00 | | $1,000.00 | **$3.33** |
| | | | $416,188.15 | **-$1,303.02** |
| | | | | |
| Alpine Plumbing | $17,840.00 | $23,740.00 | $23,740.00 | **-$79.13** |
| Benchmark Land Technology | $0.00 | $3,439.20 | $3,439.20 | **-$11.46** |
| Bliffert Lumber | $47,283.24 | | $47,283.24 | **-$157.61** |
| Burleigh Glass | $406.56 | | $406.56 | **-$1.36** |
| Dean's Maintenance Service | $1,725.00 | | $1,725.00 | **-$5.75** |
| Eagle Electric | $37,906.46 | $37,906.85 | $37,906.85 | **-$126.36** |
| Mared Mechanical | $3,136.00 | | $3,136.00 | **-$10.45** |
| Milwaukee Water Works | $39,478.00 | $54,032.81 | $54,032.81 | **-$180.11** |
| Standard Roofing | $3,344.56 | | $3,344.56 | **-$11.15** |
| We Energies | $2,193.13 | | $2,193.13 | **-$7.31** |
| | | | $177,207.35 | **-$590.69** |
| | | | | |
| **Total Unsecured Payments** | **$902,746.10** | | **$593,395.50** | **-$1,893.71** |
| **Total Plan Payments (All Classes)** | | | | **-$65,892.89** |